# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. CR24-4021-LTS-KEM |
| vs. | |
| DENNIS LAWSON, | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | |

## I.      INTRODUCTION

This matter is before me on a renewed motion (Doc. 230) for judgment of acquittal filed by defendant Dennis Lawson.  The Government has filed a resistance (Doc. 244) and Lawson has filed a reply (Doc. 245).  Oral argument is not necessary.  *See* Local Rule 7(c).

## II.      FACTUAL AND PROCEDURAL BACKGROUND

Lawson was charged by superseding indictment (Doc. 58) with one count of conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), 841(c) and 846 (Count 1), one count of conspiracy to conceal objects with the intent to impair their availability for an official proceeding in violation of 18 U.S.C. §§ 1512(c)(1) and 1512(k) (Count 3), one count of concealing objects with the intent to impair their availability for official proceedings in violation of 18 U.S.C. §§ 2 and 1512(c)(1) (Count 4), one count of using the threat of physical force against another with the intent to conceal objects with the intent to impair their integrity or availability for use in an official proceeding in violation of 18 U.S.C. §§ 2, 1512(a)(2)(B)(ii) (Count 5) and one count of using the threat of physical force against another with the intent to hinder, delay, or prevent the communication to a law enforcement officer and judge of the United States

of information relating to the commission and possible commission of a federal offense in violation of 18 U.S.C. §§ 2, 1512(a)(2)(C) (Count 6).

A jury trial began November 12, 2025. The Government presented testimony from 54 witnesses and entered 146 exhibits into evidence. *See* Doc. 185-1. Co-defendant Floyd Clifford Coates, Jr., entered one exhibit into evidence and Lawson entered one exhibit into evidence. *Id.*

At the close of the Government's case, Lawson made a general Rule 29(a) motion for a judgment of acquittal on all counts. Doc. 184. I reserved ruling on the motion. *Id.* On November 25, 2025, the jury returned a verdict (Doc. 188) finding Lawson not guilty on Counts 1, 3, 4 and 5 and guilty on Count 6. Lawson now renews his motion for a judgment of acquittal on Count 6.


## III. DISCUSSION

Rule 29 provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Such a motion is permitted after trial, in which case the court may set aside the verdict and enter a judgment of acquittal. *See* Fed. R. Crim. P. 29(c). Jury verdicts are not lightly overturned. *See, e.g.*, *United States v. Peneaux*, 432 F.3d 882, 890 (8th Cir. 2005); *United States v. Stroh*, 176 F.3d 439, 440 (8th Cir. 1999). The court views the evidence "in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict." *United States v. Ellefson*, 419 F.3d 859, 862 (8th Cir. 2005) (internal quotations omitted). The court must uphold the jury's verdict so long as a reasonable-minded jury could have found the defendant guilty beyond a reasonable doubt. *United States v. Peters*, 462 F.3d 953, 957 (8th Cir. 2006). Moreover, courts "must uphold the jury's verdict even where the evidence 'rationally supports two conflicting hypotheses' of guilt and innocence." *Id.* (quoting *United States v. Serrano-Lopez*, 366 F.3d 628, 634 (8th Cir. 2004)). Additionally, courts should not

2

reconsider the credibility of the witnesses, as that is a task for the jury. *United States v. Hayes*, 391 F.3d 958, 961 (8th Cir. 2004).

Lawson argues his witness tampering conviction should be set aside because the Government failed to present evidence from which any rational juror could find the elements satisfied beyond a reasonable doubt. He argues the jury rejected the Government's overarching theory by acquitting Lawson of the conspiracy and obstruction counts that supplied the federal nexus for Count 6. Specifically, he argues the Government failed to prove that: (1) Lawson used or threatened physical force, (2) acted with the intent to hinder, delay or prevent communication to federal authorities, (3) a federal nexus and (4) the information at issue related to the commission or possible commission of a federal offense. Lawson argues that his acquittals reflect that the jury did not credit evidence that Lawson handled the body of the victim, participated in its disposal, directed concealment or engaged in acts intended to impair evidence for use in a proceeding. The only actions the jury accepted as proven were the verbal statements attributed to Lawson. Lawson argues these alone are insufficient to sustain a conviction under § 1512(a)(2)(C).

A violation of § 1512(a)(2)(C) requires proof of the following elements:

1. The defendant knowingly used the threat of physical force against another;

2. The defendant acted with intent to hinder, delay or prevent another from communicating to a law enforcement officer or a judge;

3. There was a reasonable likelihood that a relevant communication would have been made to a federal officer and/or judge of the United States; and

4. The information that would have been communicated related to the commission or possible commission of a federal offense.

*See Fowler v. United States*, 563 U.S. 668 (2011); 8th Cir. Model Instruction 6.18.1512; Doc. 164-1 at 25.

3

Lawson's conviction is based primarily on the testimony of Samantha Miller. Miller testified she had known Lawson since she was 11 or 12 years old. Doc. 224 at 11-12. In 2019, she began driving Coates to drug deals to make some money. *Id.* at 18-22. On Easter weekend 2019, Coates asked her to meet him in Blair, Nebraska, at the home of Brenda and Todd Hunter.[1] *Id.* at 24-31. After Miller arrived, she smoked methamphetamine with Brenda and, "hours" later, she and Coates left. *Id.* at 31-33. While Miller was putting her things in the vehicle, Coates said something about a girl in the passenger seat "looking weird" and needing to take her pulse. Miller stated she began panicking and told Coates to splash cold water on her. *Id.* at 34. Miller recalled him saying "she must be dead." *Id.* at 35.

Shortly after Coates came out of the trailer with water, Brenda followed "freaking out and screaming" and telling them they needed to leave. *Id.* at 36. Miller and Coates left in the vehicle with Miller driving and the victim's body in the front passenger seat. *Id.* at 35-36. Eventually, they make their way to Lawson's residence, with whom Coates had been communicating. Miller parked the vehicle in the garage and Lawson shut the garage door. *Id.* at 51-52. All three went into Lawson's residence and used methamphetamine. *Id.* at 53-54.

Lawson and Coates then left the residence. When they returned they asked Miller to clean out the vehicle. *Id.* at 54-56. The body was no longer there. *Id.* at 57. Miller testified that Lawson said if she "said anything that it would be my funeral." *Id.* at 57, 59. She said Lawson said this "[l]ike, it was a joke, but it didn't feel like a joke, I guess." *Id.* at 57. When asked what she thought he meant, Miller testified, "it's pretty self-explanatory at that point. Like, it's nothing that you can really take misconstrued." *Id.* at 59. When asked if she thought it was a threat, she answered, "Kind of, yeah." *Id.* After cleaning the vehicle, Miller and Coates traveled to Decatur, Nebraska, and she was

---

[1] Miller recalled Coates mentioning he was traveling with a girl. Doc. 224 at 26-27.

later dropped off at a casino.  *Id.* at 61-62.  Later that summer, when Miller saw Lawson, he would tell her "not to say anything" or "no pillow talk."[2]  *Id.* at 67.

With regard to the threat of physical force element, Lawson argues that neither statement attributed to Lawson ("it could be [her] funeral" and "no pillow talk") constitutes a threat of physical force because they are susceptible to non-threatening interpretations, including expressions of caution, as opposed to a serious expression of intent to inflict violence.  There is also no immediacy, specificity or reference to how, when or by whom any harm would occur.

With regard to the second element of intent to hinder, delay or prevent communications to a federal law enforcement officer or judge, Lawson argues that, at the time the alleged statements were made, no federal agents were involved, no federal subpoenas had issued and no federal investigation or proceeding was underway.  There was also no evidence that a report by Miller would have ordinarily or predictably been directed to federal authorities rather than state or local law enforcement.

As to the third element – whether there was a reasonable likelihood that the communication at issue would have been made to a federal officer or judge of the United States – Lawson acknowledges that the statute does not require proof that Lawson knew the communication would be federal in character.  However, he argues the Government failed to prove an objective federal nexus – that the communication, if made, was reasonably likely to reach federal authorities.  He argues that a generalized, speculative or hypothetical possibility of federal involvement is not enough.

Finally, with regard to whether the communication Lawson allegedly sought to prevent would have concerned "the commission or possible commission of a federal offense," he argues Miller had no knowledge regarding any of the circumstances surrounding the victim's death beyond a possible overdose.  To the extent the information

---

[2] Miller testified at this time she was dating a man who lived down the road from Lawson.  *Id.* at 66-67.

could have included the subsequent concealment of a body, Lawson argues that this is traditionally and presumptively a matter of state law. He notes that the jury acquitted Lawson of all counts alleging a drug conspiracy, taking that federal predicate out of the equation. Any other hypothetical federal offense or post hoc federal characterization is insufficient.

The Government argues that the first and second elements are established by Miller's observations of Lawson's words and actions. It notes that intent may be proved like anything else and Miller's testimony illustrates that she perceived Lawson's statements and actions as a threat to keep her silent. While no corroboration is required, the Government argues her account is corroborated by other evidence and testimony. It observes that Lawson's statement was made while he and Coates watched Miller clean the vehicle. Another witness testified that Coates perceived Lawson's statement as a threat, as Coates told this witness Lawson wanted to "knock" or kill Miller so there would not be any witnesses. Doc. 219 at 69. The Government also cites testimony from Miller's former lawyer, who was worried about Miller's safety after Miller told him about Lawson's statement. He testified her demeanor suggested she was scared, which the Government argues is consistent with Miller's demeanor during her testimony at trial. Finally, the Government notes that Miller kept silent about the details of her observations for years, demonstrating that she perceived Lawson's threat as real.

The Government argues the third and fourth elements are established by the context within which the threat was made. It notes that the testimony of multiple witnesses established that Coates was an armed drug dealer moving pounds of methamphetamine across state lines. It also established that Lawson knew Coates was a drug dealer and had personally obtained methamphetamine from Coates. Miller's testimony also established that she and Coates arrived at Lawson's residence with an apparently dead body and Coates had suggested that she had died from an overdose of drugs he provided to her. The Government also cites evidence that Lawson and Coates were in contact as Coates traveled interstate to Lawson's home, including that Lawson

6

called Coates and Coates called Lawson. The Government argues it was impossible that Lawson was ignorant of the criminal exposure and the distinctive federal character presented by the circumstances (interstate travel by a drug dealer with a dead body in the car who had perhaps died from an overdose of drugs Coates had provided).

Viewing the evidence in the light most favorable to the Government, there was sufficient evidence to establish Lawson's conviction under § 1512(a)(2)(C). As to the first element, Lawson's statement to Miller that it would "be her funeral" if she said anything implies that she would be killed for speaking to authorities. This certainly qualifies as a "threat of physical force." Given this initial statement, a reasonable person would interpret Lawson's later statements "not to say anything" and "no pillow talk" to encompass that same sentiment. The Eighth Circuit has recognized that a similar phrase – "snitches get stitches" – when used in a certain context, "would cause a reasonable person who is cooperating with investigators to fear bodily harm." *United States v. Colhoff*, 833 F.3d 980, 985 (8th Cir. 2016) (citing cases in which courts have upheld convictions for witness tampering or witness intimidation based on the phrase "snitches get stitches."). Even if Lawson's statement could be interpreted as anything other than a death threat, the Government is entitled to all reasonable inferences. Thus, the evidence was sufficient to support the first element of a § 1512(a)(2)(C) offense.

As to the second element, Lawson focuses on the lack of federal involvement at the time the statement was made, arguing that there could not have been an intent to prevent communications to a *federal* law enforcement officer or judge as opposed to a state or local authority. As such, his argument encompasses both the second and third elements. Again, context is important and as the Government notes, intent may be proved through circumstantial evidence. While Lawson focuses on the jury's acquittals on the other counts reflecting a rejection of evidence that he was involved in a drug conspiracy, handled the body of the victim, participated in its disposal, directed concealment or engaged in acts intended to impair evidence for use in a proceeding, he ignores other evidence that suggests a reasonable likelihood that a statement by Miller would make its

7

way to federal authorities.  This evidence includes the fact that Miller knew Coates was dealing methamphetamine across state lines and that the victim may have overdosed from drugs Coates had supplied.[3]  Doc. 224 at 44-47.  While the jury may not have found the Government proved Lawson's involvement in disposal of the body beyond a reasonable doubt, that does not necessarily mean it concluded Lawson was blind to the situation and a possible drug connection, particularly because Lawson knew Coates was a drug dealer and had personally obtained methamphetamine from Coates.[4]  Given the common knowledge of federal regulation of illegal drugs, it was not unreasonable to believe that any statement by Miller was likely to reach federal authorities.  The jury had sufficient evidence to conclude that Lawson made the statements with the intent to hinder, delay or prevent another from communicating to a federal law enforcement officer or judge and that there was a reasonable likelihood[5] that a relevant communication would have been made to a federal officer and/or judge of the United States.

---

[3] The fact that the jury acquitted Lawson of the drug conspiracy has no impact on whether Lawson understood the federal implications presented by the circumstances at the time he made the statements to Miller.  There is no requirement that Lawson himself had personally committed a federal violation and nothing in the statute suggests he could not have made the threat on someone else's behalf.

[4] *See* Doc. 219 at 31 (in which a witness who distributed methamphetamine with Coates testified that she observed Coates give Lawson methamphetamine); Doc. 220 at 77-78 (in which a fellow inmate of Coates' testified Coates told him he had been regularly delivering four ounces of methamphetamine to Lawson every one or two weeks); Doc. 220 at 157-58 (in which a fellow inmate of Coates' testified Coates told him he delivered four ounces of methamphetamine to Lawson "every time he went by.").

[5] While Lawson argues the Government's evidence does not amount to more than a generalized possibility that federal authorities could become involved, I disagree.  Lawson's arguments focus on the alleged cover-up or disposal of the body and ignore the evidence regarding how or why the victim allegedly died, which Miller testified Coates had told her was a result of drugs he had provided.  Lawson knew that Miller was aware of Coates' drug dealing and had traveled with Coates with the body in the vehicle.  Given Lawson's knowledge of Coates' apparent involvement in the death, there was a reasonable likelihood that a communication by Miller would have been made to federal authorities.

8

With regard to the fourth element – the information related to the commission or possible commission of a federal offense – this again is supported by evidence concerning Coates' drug dealing and the victim's possible overdose from drugs Coates had given her. Even if the jury rejected evidence that Lawson was involved with drug trafficking or disposal of the body, it could have concluded reasonably that Lawson threatened Miller for purposes of covering up Coates' involvement with the victim's death. Lawson, who received drugs from Coates and had knowledge of the body in Coates' vehicle, certainly had a motive to protect Coates, in addition to himself, by threatening Miller. Miller herself testified that she was concerned she could face drug charges as a result of her involvement, demonstrating that she too understood the possibility of a federal offense. Doc. 224 at 135.

I disagree with Lawson that the reliance on drug trafficking and the overdose are too attenuated to provide the federal nexus.[6] The Government needed to prove only a "reasonable likelihood that, had . . . the victim communicated with law enforcement officers, at least one relevant communication would have been made to a federal law enforcement officer." *Fowler*, 563 U.S. at 677. In *Fowler*, the Court gave the example

---

[6] Lawson also argues the Government had to prove that Lawson contemplated a particular federal proceeding when he made the statement and because there was no criminal investigation underway at the time he made the statement, any concern about he or Coates facing criminal consequences does not establish the required nexus to a qualifying criminal proceeding. *See United States v. Goodlow*, --F.4th---, 2026 WL 889924, at *4 (8th Cir. Apr. 1, 2026). *Goodlow* involved a § 1512(c)(2) charge, which makes it a crime for someone to corruptly or otherwise obstruct, influence or impede any official proceeding or attempt to do so. Thus, unlike a § 1512(a)(2)(C) charge, the existence of an official proceeding is part of the elements of the offense. Nonetheless, Lawson argues *Goodlow* is instructive because in that case, the alleged conduct took place on an Indian reservation – an area of exclusive federal jurisdiction – where federal involvement would have been far more apparent to a reasonable person. However, the issue in *Goodlow* was not related to the commission or possible commission of a federal offense, but to whether Goodlow had contemplated a particular proceeding when he asked a witness to lie. It simply involves a different element that is not part of the § 1512(a)(2)(C) offense at issue here.

9

that "where the defendant kills a person with an intent to prevent communication with law enforcement officers generally, that intent includes an intent to prevent communications with *federal* law enforcement officers only if it is reasonably likely under the circumstances that (in the absence of the killing) at least one of the relevant communications would have been made to a federal officer." *Id.* at 677-78. The Court further clarified that the "[t]he Government need not show that such a communication, had it occurred, would have been federal beyond a reasonable doubt, nor even that it is more likely than not." *Id.* at 678. Lawson's arguments seek to hold the Government to these higher burdens and ignore the overwhelming drug evidence. The fact that evidence was insufficient to convict Lawson does not diminish its relevance as to whether Miller had information as to the commission or possible commission of a federal offense.[7] The evidence was sufficient to establish the fourth element of the offense.

In summary, viewing the evidence in the light most favorable to the Government and accepting all reasonable inferences that support the jury's verdict, I find there was sufficient evidence to convict Lawson under § 1512(a)(2)(C).

## IV.  CONCLUSION

For the reasons set forth herein, Lawson's renewed motion (Doc. 230) for judgment of acquittal is **denied**.

**IT IS SO ORDERED** this 27th day of April, 2026.

_____
Leonard T. Strand
United States District Judge

---

[7] The Government also presented testimony that missing persons cases and kidnappings are also frequently investigated by the FBI, providing another basis for the jury to conclude Lawson knew Miller had information involving the commission or possible commission of a federal offense.